IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
WESTERN DIVISION

|  |  |  |
|---|---|---|
| MARGIE J. PHELPS, | * | |
| | * | |
| | * | 1:13-cv-00011 |
| Petitioner, | * | |
| | * | |
| v. | * | |
| | * | |
| RED OAK POLICE CHIEF DRUE | * | |
| POWERS, et al., | * | |
| | * | |
| Respondents, | * | |
| | * | |
| STATE OF IOWA, | * | |
| | * | ORDER |
| Intervenor. | * | |
| | * | |

Before the Court is a Request for Attorney's Fees, filed December 18, 2014, by Petitioner

Margie Phelps ("Petitioner").  *See* Clerk's No. 111.  Intervenor the State of Iowa ("the State")

filed a response on January 5, 2015.  *See* Clerk's No. 113.  Respondents Red Oak Police Chief

Drue Powers ("Chief Powers") and Montgomery County Sheriff Joe Sampson ("Sheriff

Sampson") also filed a response on January 5, 2015.  *See* Clerk's No. 114.  Phelps filed a reply

on January 14, 2015.  *See* Clerk's No. 115.  The matter is fully submitted.

## I.      FACTUAL BACKGROUND

Petitioner is a member of the Westboro Baptist Church.  Clerk's No. 84-1 ¶ 1.  Members

of the church regularly engage in picketing and public demonstrations, during which they often

mishandle the American flag by dragging it on the ground and wearing it on their bodies.  *Id.* ¶¶

2, 4.  At protest events in Red Oak, Iowa, members of the church were told by Chief Powers and

Sheriff Sampson that if they continued to mishandle the flag, Iowa's flag desecration statutes

would be enforced against them.  Clerk's No. 84-2 ¶¶ 10-17.  Neither Petitioner nor any other protestors were actually arrested or charged with any crime.  *Id*. ¶ 18.

Petitioner filed this lawsuit under 42 U.S.C. § 1983, challenging the constitutionality of Iowa's flag desecration statutes both facially and as applied to the factual circumstances of this case.  *See* Clerk's No. 1.  Petitioner initially filed a motion to certify all members of the Westboro Baptist Church as a class of Petitioners, as well as a motion to certify all active duty county sheriffs and municipal police chiefs in Iowa as a class of Respondents.  *See* Clerk's No. 60 at 3.  That motion was denied and the case proceeded with the named Respondents.  *Id*. at 14.  Originally, the lawsuit also named Ralph O'Donnell, the Police Chief of Council Bluffs, Iowa ("Chief O'Donnell"), as a Respondent.  *See id*.  Chief O'Donnell filed three counterclaims against Petitioner, including abuse of process, defamation, and "intentional infliction of mental distress."  *See* Clerk's Nos. 16, 48.  All of the counterclaims were later dismissed by the Court for failure to state a claim upon which relief could be granted.  *See* Clerk's Nos. 65 at 15–16, 87 at 10.  Petitioner then voluntarily made a motion to dismiss Chief O'Donnell from the case without substitution, which was granted by the Court.  *See* Clerk's No. 89 at 1–2.

Cross-motions for summary judgment were filed by Petitioner and the State, with Chief Powers and Sheriff Sampson joining the motion by the State.  *See* Clerk's Nos. 84, 80, 81.  On December 3, 2014, the Court issued an order declaring Iowa's flag desecration statutes facially unconstitutional under the First Amendment, and unconstitutional as applied to the facts of the case.  *See* Clerk's No. 109 at 25.  Pursuant to 42 U.S.C. § 1988, Petitioner now seeks attorney's fees in the amount of $37,750.  *See* Clerk's No. 111 at 2.

## II.      LAW AND ANALYSIS

Pursuant to 42 U.S.C. § 1988(b), the prevailing party in a § 1983 claim may be awarded reasonable attorney's fees at the Court's discretion.  A "prevailing party should recover attorney's fees unless special circumstances would render such an award unjust."  *Kimbrough v. Ark. Activities Ass'n*, 574 F.2d 423, 427 (8th Cir. 1978).  The starting point for determining a reasonable amount of attorney's fees is the lodestar, "which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates."  *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005).  A reasonable hourly rate is the ordinary rate for similar work in the community where the case has been litigated.  *Little Rock Sch. Dist. v. Arkansas*, 674 F.3d 990, 995 (8th Cir. 2012).  "The congressional purpose in providing attorney's fees in civil rights cases [is] to eliminate financial barriers to the vindication of constitutional rights and to stimulate voluntary compliance with the law."  *Seattle Sch. Dist. No. 1 v. Washington*, 633 F.3d 1338, 1348 (9th Cir. 1980).  An award of attorney's fees is reviewed for an abuse of discretion.  *Miller v. Dugan*, 764 F.3d 826, 830 (8th Cir. 2014).

Here, neither the number of hours worked nor the hourly rate charged by Petitioner's attorney are challenged.  *See* Clerk's Nos. 113, 114.  Instead, the State argues that its action in this case was "limited" and thus, its liability for attorney's fees should also be limited.  Clerk's No. 113 at 2.  The State further argues that it should not be liable for fees related to Petitioner's failed attempt at bringing a dual class claim or for fees related to Chief O'Donnell's counterclaims.  *Id*.  Chief Powers and Sheriff Sampson echo the State's arguments, but also argue that they were "simply performing their State imposed duty to enforce the flag desecration statutes," and thus, the State should be liable for the entire fee award.  Clerk's No. 114, at 1, 3.

A. *Dual Class Claims*

The State argues that it would be inequitable to hold it liable for attorney's fees related to Petitioner's failed attempt to bring a dual class claim because it did not "participate in either the certification or resistance." Clerk's No. 113 at 2.  The Court disagrees.  As an intervenor, the State "subjects itself to any costs that may be incurred in the action." *Wis. Socialist Workers 1976 Campaign Comm. v. McCann*, 460 F.Supp. 1054, 1058 (E.D. Wis. 1978).  Here, the hours spent attempting to certify a dual class were simply an alternative litigation strategy in pursuit of Petitioner's successful challenge to the flag desecration statutes.  Generally, a prevailing party should be compensated for time spent on successful claims as well as unsuccessful claims, as long as the claims "'involve a common core of facts' or are 'based on related legal theories.'" *Emery v. Hunt*, 272 F.3d 1042, 1046 (8th Cir. 2001) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983)).  Thus, the fact that the certification attempt failed does not prevent an award of fees for the work done, especially where Petitioner prevailed on the constitutional challenge. [1] *See id*. at 1047 ("'Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee'" that "'should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.'") (quoting *Hensley*, 461 U.S. at 435). Accordingly, the Court will not reduce the award of attorney's fees based on the failed attempt to certify a dual class.

B. *Chief O'Donnell's Counterclaims*

The State also argues that it should not be liable for "time spent responding to and negotiating" counterclaims that the State had no part in.  Based on the unusual facts surrounding

---

[1]  For the same reason, the Court declines to reduce the award on the basis that Petitioner did not prevail on her void for vagueness challenge. *See* Clerk's No. 113 at 2.

Chief O'Donnell's counterclaims and dismissal from the case, the Court concludes that it would be inequitable to hold the State or either of the remaining Respondents liable for fees related solely to Chief O'Donnell's counterclaims.  Following the dismissal of Chief O'Donnell's counterclaims, Petitioner voluntarily moved to dismiss Chief O'Donnell from the case without substitution.  *See* Clerk's No. 89 at 1–2.  That motion was prompted both by Chief O'Donnell's retirement, as well as an agreement between Petitioner, Chief O'Donnell, and the City of Council Bluffs not to pursue continued litigation against one another.  *Id.*  Petitioner made the decision not to substitute Chief O'Donnell's replacement as a Respondent in this case.  The State and the remaining Respondents should not bear the costs associated with defending Chief O'Donnell's counterclaims because of Petitioner's own choice not to continue her case against him or the City of Council Bluffs.

Petitioner states that "[Chief O'Donnell] likewise was defending the constitutionality of the statutes, and even though [he] brought many spurious counterclaims, the Petitioners made a good faith effort to segregate and zero out time purely spent on those claims in the itemized claim submitted."  Clerk's No. 115 at 2–3.  Petitioner estimates that twenty-nine hours of attorney time was devoted solely to defending the counterclaims, which, at an hourly rate of $300, would equal $8,700.  *See* Clerk's No. 111-1 at 20.  The Court has reviewed the itemized billing statement submitted by Petitioner and agrees with Petitioner's estimate, but finds that the billing statements do not reflect an attempt by Petitioner to "zero out" those claims.[2] Accordingly, the Court will reduce the award of attorney's fees by $8,700.

---

[2] Petitioner's attorney does voluntarily reduce the overall fees in this case by $750, but that reduction only related generally to billing for "briefing" and not to the counterclaims specifically.  *See* Clerk's No 111-1 at 17.

C.  *Attorney's Fee Award*

1.      *Apportionment.*

The State argues that the fees awarded should be "commensurate with the respective actions of the parties," and claims that its action was limited to "the existence of the challenged statutes."  Clerk's No. 113 at 1.  Chief Powers and Sheriff Sampson argue that they "were simply performing their State imposed duty to enforce the flag desecration statutes," and thus the fee award should be "allocated to the State as the only culpable Defendant."  Clerk's No. 114 at 2–3.

The Eighth Circuit has rejected the exact argument made by Chief Powers and Sheriff Sampson:

> [G]overnment officials are not bound to follow state law when that law is itself unconstitutional.  Quite the contrary: in such a case, they are bound *not* to follow state law.  It is true that a [state official] may not know for certain whether a state law is valid or not, and that he may feel obliged to enforce the law until a determination as to its validity has been made.  This, however, is not a special circumstance justifying the denial of the customary award of fees.  Presumably it will always be true that state officials enforcing a law or otherwise defending state action will believe, or at least hope, that the law or action in question will be upheld against a federal constitutional attack.  The point of § 1988 is that such officials proceed at their peril.  If in fact they are wrong, and the law they are enforcing turns out to be invalid, § 1988 puts the financial burden on the state officials.  The judgment of Congress is that the burden rests more properly on them than on the party who has been wronged by the application of an invalid law.

*Carhart v. Stenberg*, 192 F.3d 1142, 1152 (8th Cir. 1999); *see also Snider v. Peters*, 928 F. Supp. 2d 1113, 1119 (E.D. Mo. 2013) (rejecting an argument from a city police officer that he should not be liable for attorney's fees because he was merely enforcing a state statute when he arrested the plaintiff).  The *Carhart* rationale is especially compelling here, where the statutes in question were previously found unconstitutional by this Court, and similar statutes have been held

unconstitutional by the Supreme Court.  *See Roe v. Milligan*, 479 F. Supp. 2d 995 (S.D. Iowa

2007); *United States v. Eichman*, 496 U.S. 310 (1990); *Texas v. Johnson*, 491 U.S. 397 (1989).

As to the State's liability for fees, the Court finds *Snider* persuasive.  That case involved

a challenge to Missouri's flag desecration statute.  The State of Missouri intervened to defend the

constitutionality of the statute, but was unsuccessful.  *See Snider*, 928 F. Supp. 2d at 1116.  On

the issue of attorney's fees, the *Snider* court concluded that the State of Missouri did not make a

compelling argument for being apportioned a lower amount of the fee award because it

"significantly prolonged the litigation by intervening to uphold a statute that was unconstitutional

under well-established, long-standing precedent."  *Id*. at 1119.  Instead, the *Snider* court

concluded that it was proper to hold the arresting police officer and the State of Missouri jointly

and severally liable for the award of attorney's fees; the award was affirmed by the Eighth

Circuit on appeal.  *Id*.; *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1159 (8th Cir. 2014).

As in *Snider*, there is no straightforward way to apportion the award of attorney's fees in

this case between the State, Chief Powers, and Sheriff Sampson.  Petitioner did not focus this

litigation more heavily on any of three individually, nor is it possible to say that one had a more

"peripheral or ministerial role," based on the facts of the case.  *See Council for Periodical

Distrib. Ass'ns v. Evans*, 827 F.2d 1483, 1487 (11th Cir. 1987) (concluding that apportionment

of an attorney's fee award can be appropriate in a situation where a co-defendant had only a

"peripheral or ministerial role in the wrong").  Accordingly, the Court concludes that the State,

Chief Powers (in his official capacity), and Sheriff Sampson (in his official capacity), are jointly

and severally liable for the award of attorney's fees.  *See Turner v. D.C. Bd. of Elections &

Ethics*, 354 F.3d 890, 897–98 (D.C. Cir. 2004) ("[A] plaintiff's fully compensatory fee for claims

centered on a set of common issues against two or more jointly responsible defendants should be

assessed jointly and severally.") (internal quotation omitted); *see also Herbst v. Ryan*, 90 F.3d 1300, 1305 (7th Cir. 2004) ("It is frequently appropriate to hold all defendants jointly and severally liable for attorneys' fees in cases in which two or more defendants actively participated in a constitutional violation.").

      2.    *Amount.*

Petitioner requests $37,750 in attorney's fees, which reflects an hourly rate of $300. *See* Clerk's No. 111-1 at 15. The hourly rate in this case has not been challenged, and the Court sees no independent reason to adjust the rate. *See Little Rock Sch. Dist.*, 674 F.3d at 995 (stating that a rate is reasonable if it is comparable to the ordinary rate for similar work in the community). Nor does the Court, after a detailed review of the billing records submitted by Petitioner, find that any of the charges were "excessive, redundant, or otherwise unnecessary." *See El-Tabech v. Clarke*, 616 F.3d 834, 843 (8th Cir. 2010) (explaining that attorney hours spent on excessive, redundant, or unnecessary matters must be excluded from a fee award) (internal quotation omitted). Thus, the Court concludes that the proper award for attorney's fees in this case is $29,050. That amount reflects Petitioner's requested award of $37,750, reduced by $8,700 for time spent exclusively defending Chief O'Donnell's counterclaims.

### III.    CONCLUSION

Petitioner's Request for Attorney's Fees and Expenses (Clerk's No. 111) is **GRANTED IN PART**. The State, Chief Powers, and Sheriff Sampson are jointly and severally liable for the award of $29,050.

IT IS SO ORDERED.

Dated this ___22nd____ day of January, 2015.

ROBERT W. PRATT, Judge
U.S. DISTRICT COURT